UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MCNATT,

       Plaintiff,

                                    Case No. 25-10291
                              U.S. DISTRICT COURT JUDGE
                              GERSHWIN A. DRAIN

v.

ROMULUS COMMUNITY SCHOOL
DISTRICT, *et al.*,

       Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT [#18], GRANTING DEFENDANTS' MOTION TO DISMISS [#12], DENYING AS MOOT DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL [#13], AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL [#22]**

## I.    INTRODUCTION

Presently before the Court are the following motions: (1) Defendants' Rule 12(b)(6) Motion to Dismiss [#12]; (2) Defendants' Motion to Disqualify Plaintiff's Counsel [#13]; (3) Defendants' Motion to Strike Plaintiff's Affidavit Submitted with Plaintiff's Opposition in Response to 12(b)(6) Motion [#18]; and (4) Defendants'

Motion for Leave to File Notice of Supplemental Authority in Support of Motion to Disqualify Plaintiff's Counsel [#22]. Upon review of the parties' submissions, the Court finds that oral argument will not aid in the disposition of the motions, and thus they will be decided on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons that follow, Defendants' Motion to Strike Plaintiff's Affidavit [#18] is GRANTED; Defendants' Motion to Dismiss [#12] is GRANTED; Defendants' Motion to Disqualify Plaintiff's Counsel [#13] is DENIED AS MOOT; and Defendants' Motion for Leave to File Notice of Supplemental Authority [#22] is DENIED AS MOOT.

## II.   **BACKGROUND**

This case arises from Plaintiff's employment with Defendant Romulus Community School District ("the District"). On June 28, 2021, Defendant Romulus Community School District Board of Education ("the Board") issued approval for Plaintiff to serve as the District's Interim Superintendent while Dr. Benjamin Edmondson, the District's Superintendent at the time, was on medical leave. ECF No. 12, PageID.91. Dr. Edmondson returned from medical leave on August 2, 2021. *See id.* at PageID.97. Soon thereafter, the Board adopted another resolution on September 27, 2021, placing Dr. Edmondson on paid administrative leave and providing that Plaintiff would act as Interim Superintendent during the pendency of Dr. Edmonson's leave. *Id.* at PageID.100-01.

2

On October 20, 2021, Plaintiff and the District entered into a written "Interim Superintendent Employment Agreement" ("the Agreement"), which memorialized and governed Plaintiff's employment as Interim Superintendent during Dr. Edmonson's administrative leave. *Id.* at PageID.106-07. It provides that the District employed Plaintiff "as its Superintendent of Schools for the limited term set forth in this Agreement," and that Plaintiff's term of employment began on September 29, 2021 and would "end no later than December 31, 2021, unless otherwise agreed by the parties." *Id.* at PageID.106. The Agreement further states:

> The District hereby provides [Plaintiff] with notice that it will not renew his employment as the District's Superintendent of Schools, or in any other temporary or permanent capacity, after this Agreement expires, and [Plaintiff] waives notice of nonrenewal, as otherwise may be required by Section 1229 of the Revised School Code, MCL 380.1229. . . . The Interim Superintendent will not have or acquire tenure as Superintendent of Schools or in any other administrative or assigned capacity. The District's failure to continue Interim Superintendent's employment after the term of this Agreement, or re-employ him in another capacity, will not be considered a breach of this Agreement.

*Id.* It also contains an integration clause, providing that the Agreement "is the parties' entire agreement and supersedes any other prior or contemporaneous agreement or understanding, written or verbal. This Agreement may not be modified or rescinded except by another written agreement, signed by both parties and approved by the Board in a public meeting." *Id.* at PageID.107. Lastly, the Agreement empowered Plaintiff to terminate the Agreement "for any or no reason[] by providing the Board's President with 30 days written notice," and the Board to

3

do the same by providing Plaintiff with "10 days written notice, and/or immediately upon written notice for a reason that is not arbitrary or capricious." *Id.* Both parties signed the Agreement on October 20, 2021, and the Board approved it that same day. *Id.* at PageID.107, PageID.103-04.

On January 10, 2022, the Board issued approval for Dr. Donald Weatherspoon to serve as Interim Superintendent through June 30, 2022, and authorized Plaintiff to temporarily continue working for the District "for purposes of transition as needed through January 31, 2022." *Id.* at PageID.116. At a special meeting held on January 31, 2022, the Board rejected a resolution for the continuance of Plaintiff's "temporary contract services." *Id.* at PageID.120.

Plaintiff initiated the present case on January 20, 2025 against the District, the Board, and individual members of the Board—Debi Pyles, Judy Kennard, Ursula Wester, Susan Evitts, Denisa Terrell, Pete Bergeron, and Nichole German ("the Individual Board Members")—in their individual and official capacities. His complaint alleges the following causes of action against all Defendants: (1) discharge against public policy under Michigan law (Count I); (2) breach of contract (Count II); (3) breach of an implied contract (Count III); (4) promissory estoppel (Count IV); (5) quantum meruit/unjust enrichment (Count V); (6) violation of federal due process (Count VI); (7) violation of state due process (Count VII); and intentional infliction of emotional distress ("IIED") (Count VIII).

Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of his response to the motion, Plaintiff submitted an affidavit and screenshots of text messages. Defendants subsequently moved to strike those materials, arguing that "Plaintiff's submission of an affidavit and text message communications—none of which were included in or incorporated by reference into the original Complaint—constitutes an improper attempt to supplement the pleadings with extrinsic evidence." ECF No. 18, PageID.332. Defendants have also moved to disqualify Plaintiff's counsel and seek leave to submit supplemental authority in support of that motion.

## III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint is not required to contain detailed allegations, "it must assert sufficient facts to provide the defendant with 'fair notice of what the claim is and the ground upon which it rests.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (quoting

*Twombly*, 550 U.S. at 555) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.   ANALYSIS

### A. Defendants' Motion to Strike [#18]

The Court first addresses Defendants' motion to strike Plaintiff's affidavit and the accompanying text messages. It is well-established that the purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true." *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 355 F. Supp. 3d 582, 589 (E.D. Mich. 2018) (citing *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001)). To that end, courts generally may not consider matters outside the pleadings when adjudicating a Rule 12(b)(6) motion. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). There are, however, limited exceptions to this rule, as a court may consider "documents referenced in the pleadings that are 'integral to the claims,' documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, and matters of public record." *In re FCA US LLC*, 355 F. Supp. 3d at 589.

Here, Plaintiff's affidavit and the attached text messages do not fall within one of these recognized exceptions. These materials contain information that does

6

not appear in the complaint, and the materials are neither referenced in the complaint nor integral to the claims. Nor do they amount to matters of public record. Accordingly, the Court may not consider them in adjudicating Defendants' motion to dismiss.

Plaintiff contends that Defendants "opened the door" to extrinsic evidence by attaching documents to their motion, thereby entitling him to do the same. ECF No. 22, PageID.381. He relies on Federal Rule of Civil Procedure 12(d), which provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

This argument is unavailing. Indeed, in support of their motion to dismiss, Defendants submitted Board meeting minutes, Board resolutions, the Agreement, and a June 28, 2021 Interim Superintendent Contract between Plaintiff and the District.[1] The Court may consider the Board meeting minutes and resolutions without converting the motion to one for summary judgment, as they are matters of public record. The Court may also consider the Agreement, as it is referenced in the

---

[1] This contract governed Plaintiff's employment with the District while Dr. Edmonson was on medical leave.

complaint[2] and central to Plaintiff's claims. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim."). By contrast, the June 28, 2021 Interim Superintendent Contract is neither referenced in the complaint nor central to Plaintiff's claims, and therefore cannot be considered without the Court converting the motion to one for summary judgment. The Court declines to convert the motion because Defendants, as the proponents of the motion to dismiss, have not had a full opportunity to present all evidence pertinent to summary judgment. As such, the Court will only consider materials that fall within a recognized exception—namely, Board minutes, Board resolutions, and the Agreement—without converting the motion to one for summary judgment. Plaintiff's affidavit and the accompanying text messages do not fall within a recognized exception, and thus will not be considered by the Court in adjudicating the motion to dismiss.

Plaintiff also contends that the Court should deny Defendants' motion to strike and impose sanctions on Defendants because they failed to comply with Eastern District of Michigan Local Rule 7.1(a)'s concurrence requirement. Indeed, Local

---

[2] *See, e.g.*, ECF No. 1, PageID.6 (alleging that "Mr. McNatt had a valid employment contract with [the District]").

Rule 7.1(a) requires a movant to confer with the other parties "in good faith and in a manner that . . . allows for an interactive process aimed at reaching agreement on the matter[.]" E.D. Mich. L.R. 7.1(a)(1). This rule further provides that "[t]he court may impose sanctions . . . for violating this rule, which may include taxing costs and attorney's fees, denying the motion, and striking the filing." E.D. Mich. L.R. 7.1(a)(3). Notwithstanding, the Court is empowered to waive the concurrence requirement when it appears "obvious that the opposing party would not have concurred in the requested relief." *Henry v. City of Detroit*, No. 21-12794, 2022 WL 1163999, at *3 (E.D. Mich. Apr. 19, 2022). Upon reviewing the parties' submissions on this motion, it is clear Plaintiff would not have concurred in the relief sought by Defendants, and thus a conference between the parties would have been futile. As such, the Court will waive the concurrence requirement for purposes of this motion and will not impose sanctions on Defendants.

For these reasons, the Court will not consider Plaintiff's affidavit, the text messages, and the June 28, 2021 Interim Superintendent Agreement in adjudicating Defendants' motion to dismiss. Doing so would require the Court to convert Defendants' motion to one for summary judgment, which the Court declines to do. As such, Defendants' motion is granted.

## B. Defendants' Motion to Dismiss [#12]

Next, Defendants move to dismiss Plaintiff's complaint in its entirety. For the

reasons that follow, the Court finds that such dismissal is appropriate.

i.   Plaintiff's Due Process Claims (Counts VI and VII)

In Counts VI and VII, Plaintiff alleges that Defendants violated his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, § 17 of the Michigan Constitution. Plaintiff contends that Defendants deprived him of his property interest in continued employment with the District without due process of law.

Both the Fourteenth Amendment to the United States Constitution and Article 1 of the Michigan Constitution provide that the state shall not deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1; Mich. Const. Art. I, § 17. The Michigan Court of Appeals has recognized that "[t]he Michigan Constitution secures the same right of . . . due process as does its counterpart in the United States Constitution." *Grieb v. Alpine Valley Ski Area, Inc.*, 155 Mich. App. 484, 487 (Mich. Ct. App. 1986). Accordingly, due process claims brought under the Michigan Constitution are analyzed under the same standards governing federal due process claims. *See, e.g.*, *Ahmed v. School District of City of Hamtramck*, No. 2:22-cv-11127, 2024 WL 4234641, at *10 (E.D. Mich. Aug. 26, 2024).

To plausibly state a procedural due process claim, a plaintiff must allege that "(1) [he] had a life, liberty, or property interest protected by the Due Process Clause;

(2) [he] was deprived of this protected interest; and (3) the state did not afford [him] adequate procedural rights prior to depriving [him] of the property interest." *Prado v. Thomas*, 804 F. App'x 332, 341 (6th Cir. 2020) (citation omitted). The existence of a protected property interest "depends largely on state law, and not every government employee has a property interest in continued employment." *Crawford v. Benzie-Leelanau Dist. Health Dep't Bd. of Health*, 636 F. App'x 261, 266-67 (6th Cir. 2016) (cleaned up). Such an interest may arise from "a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citations omitted).

Here, Plaintiff fails to plausibly allege a protected property interest in his continued employment with the District. The Agreement unambiguously established a fixed term of employment and expressly provided that the District "will not renew his employment as the District's Superintendent of Schools, or in any other temporary or permanent capacity, after this Agreement expires." ECF No. 12, PageID.106. Consistent with these terms, the District appointed a new interim superintendent following the expiration of Plaintiff's term of employment, while retaining Plaintiff only through January 30, 2022 to temporarily assist with the transition. Doing so was not a "termination," but rather reflected the expiration of Plaintiff's fixed term of employment. Thus, at the time the District selected a new interim superintendent, Plaintiff lacked a protected property interest in his continued

11

employment with the District.

In his response to Defendants' motion to dismiss, Plaintiff argues that his term of employment automatically renewed for an additional year because the District failed to provide notice of nonrenewal as required by MICH. COMP. LAWS § 380.1229. Indeed, § 380.1229 provides that "[i]f written notice of nonrenewal of the contract of a superintendent is not given at least 90 days before the termination of the contract, the contract is renewed for an additional 1-year period." MICH. COMP. LAWS § 380.1229(1). Here, however, the Agreement expressly states that the District "will not renew his employment as the District's Superintendent of Schools, or in any other temporary or permanent capacity, after this Agreement expires," and that Plaintiff "waives notice of nonrenewal, as otherwise may be required by . . . MCL 380.1229." ECF No. 12, PageID.106. The Agreement, by its plain terms, itself provided Plaintiff with notice of nonrenewal and effected a waiver of any statutory notice requirement. By executing the Agreement, Plaintiff accepted those terms and cannot now invoke the statute to create a right to renewal that the Agreement expressly disclaims.

Moreover, the Court notes that even if Plaintiff was terminated during his term of employment, he nevertheless lacked a protected property interest in his continued employment with the District because he was an at-will employee. At-will employees do not possess a constitutionally protected property interest in their

12

continued employment. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 766 (6th Cir. 2010) (citing *Lytle v. Malady*, 458 Mich. 153 (Mich. 1998)). "Employment 'at-will' means that the employment contract is 'terminable at the will of either party for any reason or for no reason at all.' " *Crawford*, 636 F. App'x at 267 (quoting *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 116 (Mich. 1993)). Here, the Agreement unambiguously provides that Plaintiff was an at-will employee. It empowered Plaintiff to terminate the "Agreement, *for any or no reason*, by providing the Board's President with 30 days written notice," and the Board to "terminate [the] Agreement, *for any or no reason*, by providing the Interim Superintendent with 10 days written notice, and/or immediately upon written notice for a reason that is not arbitrary and capricious." ECF No. 12, PageID.107 (emphasis added). Because the Agreement was terminable by either party for any reason or for no reason at all, he was an at-will employee who lacked a constitutionally protected property interest in his continued employment.

For these reasons, the Court concludes that Plaintiff has failed to plausibly allege a protected property interest in his continued employment with the District. Without such an interest, he cannot establish a procedural due process violation. As such, Counts VI and VII will be dismissed.

### ii. Plaintiff's Breach of Contract Claim (Count II)

Plaintiff asserts a breach of contract claim against Defendants, alleging that

they breached the Agreement "by not fulfilling the terms of the contract when Defendants unlawfully terminated [him] from [the District], thereby preventing [Plaintiff] from working for the full term of the contract." ECF No. 1, PageID.6. To state a claim for breach of contract under Michigan law, a plaintiff "must plead three elements: (1) a contract, (2) Defendants' breach of the contract, and (3) damages to Plaintiff[] caused by the breach." *Emergency Dep't Phys. P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 827-28 (E.D. Mich. 2020) (citing *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 100-01 (Mich. 2016)). "[A]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of the written agreement." *C.H. Raches, Inc. v. Gen. Aluminum Mfg. Co.*, 2:16-cv-10976, 2018 WL 1365888, at *2 (E.D. Mich. Mar. 16, 2018) (quoting *Innovation Venture v. Liquid Mfg.*, 499 Mich. 491, 507 (Mich. 2016)). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law," and "[o]nce discerned, the intent of the parties will be enforced unless it is contrary to public policy." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (Mich. 2003) (citation omitted).

Here, Plaintiff's complaint fails to allege a plausible breach of contract claim. As discussed above, the Agreement unambiguously establishes a fixed term of employment. It also provides that "the District's failure to continue [Plaintiff's] employment after the term of this Agreement, or re-employ him in another capacity,

14

will not be considered a breach of this Agreement." ECF No. 12, PageID.106.

Consistent with these terms, the District appointed a new interim superintendent to

work for the District after Plaintiff's term of employment expired. As discussed

above, doing so did not constitute a "termination," but rather reflected the expiration

of Plaintiff's fixed term of employment.[3] Nor did it amount to a breach of the

Agreement, as the District had no contractual obligation to rehire Plaintiff beyond

his fixed term.

Moreover, while the Agreement allows for an extension of the fixed term if

"agreed by the parties," *id.* at PageID.106, its integration clause expressly requires

that any such agreement be in writing and approved by the Board. Plaintiff's

complaint alleges only that the District "offered [him] an extended contract through

June 30, 2022," ECF No. 1, PageID.4, but does not allege facts regarding acceptance,

consideration, or mutual assent sufficient to form a binding contract. Nor does

Plaintiff allege that any purported agreement was reduced to writing and approved

by the Board, as required by the integration clause. To the contrary, the public record

---

[3] Moreover, even if he were "terminated" during his term of employment, such termination would not amount to a breach of the Agreement. As discussed above, the Agreement unambiguously provides that Plaintiff was an at-will employee that the Board could terminate "*for any or no reason*, by providing [Plaintiff] with 10 days written notice, and/or immediately upon written notice for a reason that is not arbitrary and capricious." ECF No. 12, PageID.107. Plaintiff's complaint does not allege facts suggesting that he was terminated in violation of this provision.

indicates that the Board declined to approve any extension of Plaintiff's employment following his temporary transition stint that ended on January 30, 2022.

For these reasons, the Court concludes that Plaintiff has not stated a plausible breach of contract claim. As such, Count II will be dismissed.

### iii.   Plaintiff's Breach of Implied Contract Claim (Count III)

In the alternative to his breach of contract claim, Plaintiff alleges that he "maintained an implied employment contract with [the District] as an interim superintendent under MCL 380.1229," and that Defendants breached that contract "by not fulfilling the terms of the contract when Defendants unlawfully terminated [him] from [the District], thereby preventing [him] from working for the full term of the contract." ECF No. 1, PageID.8.

"[U]nder Michigan law, an implied contract can exist only if there is no express contract." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) (citing *Martin v. E. Lansing Sch. Dist.*, 193 Mich. App. 166 (Mich. Ct. App. 1992)). Here, Plaintiff's employment was governed by a written agreement that unambiguously established a fixed term of employment and provided that Plaintiff's employment would end upon its expiration. The Agreement further requires that any modification to his term of employment be in writing, and Plaintiff does not allege that any such written agreement exists. As such, because an express contract governing Plaintiff's employment with the District exists, he may not

16

advance an implied contract claim. And even if he could, Plaintiff's reliance on MICH. COMP. LAWS § 380.1229 is, once again, misplaced. As discussed above, the Agreement itself provided Plaintiff with notice of nonrenewal and effected a waiver of the statute's notice of nonrenewal requirement. Having executed the Agreement, Plaintiff cannot now invoke the statute to create a right to renewal that is expressly disclaimed by the Agreement.

For these reasons, Count III will be dismissed.

### iv. Plaintiff's Quasi-Contract Claims (Counts IV and V)

In Counts IV and V, Plaintiff pleads two equitable "quasi" contract claims in the alternative to his breach of contract claim: promissory estoppel and quantum meruit/unjust enrichment. "It is well-settled that equitable promissory estoppel and unjust enrichment claims cannot lie in the presence of a valid contract between the same parties governing the same subject matter." *P.R.A. Co. v. Arglass Yamamura SE, LLC*, 768 F. Supp. 3d 862, 872 (E.D. Mich. 2024) (citing *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (Mich. Ct. App. 2006); *Able Demolition v. Pontiac*, 275 Mich. App. 577 (Mich. Ct. App. 2007); *Lynch v. Sease*, 244 F. App'x 736, 739 (6th Cir. 2007)). Moreover, while Federal Rule of Civil Procedure 8(a) "allows a party to *plead* equitable quasi-contract claims—like promissory estoppel and unjust enrichment—in the alternative to a breach of contract claim, this alternative pleading is available only when contract validity is unknown or unclear."

17

*Id.* (citation omitted and emphasis in original). As discussed above, the Agreement is an express, unambiguous contract that governs the subject matter of Plaintiff's claims, and as such, Plaintiff's quasi-contract claims are barred as a matter of law. Dismissal of Counts IV and V is warranted on this basis alone.

Even if the Agreement did not bar Plaintiff from bringing these claims, Plaintiff's complaint nevertheless fails to state plausible promissory estoppel and unjust enrichment claims. First, to state a claim for promissory estoppel under Michigan law, a plaintiff must allege: "(1) the parties made a promise; (2) the promisee acted in reliance; (3) the promisor 'should reasonably have expected to induce' the promisee's reliance; and (4) enforcing the promise avoids injustice." *Id.* at 871 (citation omitted). In instances where a contract contains an integration clause, the promisee's reliance on extrinsic promises is unreasonable as a matter of law. *Able Demolition*, 275 Mich. App. at 577 n.4. Here, the Agreement's integration clause provides that any extension to Plaintiff's term of employment must be in writing and approved by the Board. Plaintiff does not allege that any such written agreement exists, and as discussed, the public record suggests the opposite. Accordingly, Plaintiff's purported reliance on Defendants' promises regarding an extension of his term of employment was unreasonable as a matter of law.

Second, unjust enrichment is defined as one party's "unjust retention of money or benefits which in justice and equity belong to another." *Tkachik v.*

18

*Mandeville*, 487 Mich. 38, 47-48 (Mich. 2010) (cleaned up). To succeed on "a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (Mich. Ct. App. 2006) (citation omitted).

Plaintiff's allegations fall short of these standards. The complaint asserts only that "Defendants received the benefit of [Plaintiff's] services when he served the District as Interim Superintendent," and that "[i]nequity resulted from Defendants['] actions as [he] was terminated prematurely . . . from a position Defendants promised he would hold through June 30, 2022." ECF No. 1, PageID.9. Plaintiff does not allege any benefit he conferred outside the scope of the Agreement, nor does he allege that he provided services for which he was not compensated. Where, as here, the alleged benefit consists solely of services rendered pursuant to an express contract, there can be no unjust enrichment as a matter of law.

For these reasons, the Court will dismiss Counts IV and V.

    v.   Plaintiff's "Discharge Against Public Policy" Claim

Plaintiff advances a "discharge against public policy" claim under Michigan law. He alleges that the Board terminated him in retaliation for his opposition to Defendant Pyles's activities that "violated public policy and damaged . .. students,

19

staff, and schools," as well as his refusal to approve the hiring of a "Security Ambassador with a felony conviction." ECF No. 1, PageID.5-6. Plaintiff contends that his purported "termination . . . violates public policy because it discourages employees from opposing activities that are unethical and/or illegal, and damaging to [the District's] students, staff, and schools, and discourages employees from exercising their statutory rights." *Id.* at PageID.6.

Indeed, Michigan law recognizes a "claim of wrongful discharge in violation of public policy." *Smith v. Town & Country Props. II, Inc.*, 338 Mich. App. 462, 476 (Mich. Ct. App. 2021). "In general, Michigan law presumes employment relationships are terminable at the will of either party for any or no reason." *Id.* (citations omitted). There are, however, "three recognized public-policy exceptions to the at-will employment doctrine, and they are based on the principle that the grounds for termination are so contrary to public policy as to be actionable." *Id.* (citation omitted). The exceptions are as follows:

> The first exception concerns "explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty ...." *Id.* (quotation marks and citation omitted). The next exception concerns circumstances "where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment ...." *Id.* (quotation marks and citation omitted). And the third exception relates to circumstances "where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment ...." *Id.* (quotation marks and citation omitted). The three public-policy exemptions "entail an employee's exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law." *Id.* at 478 (quotation marks and citation omitted).

*Redzinski v. Spectrum Health Hosps.*, No. 366932, 2025 WL 618310, at \*3 (Mich. Ct. App. Feb. 25, 2025).

Plaintiff's complaint fails to allege a plausible discharge against public policy claim. As discussed above, he was not terminated from his employment. The Agreement provided for a fixed term of employment, and the Board chose to hire a different interim superintendent once his employment term ended. As such, he has not alleged a plausible "discharge against public policy" claim, and accordingly, the Court will dismiss Count I.

vi.   Plaintiff's IIED Claim (Count VIII)

Lastly, the Court finds that dismissal of Plaintiff's IIED claim is warranted. To prevail on an IIED claim under Michigan law, a plaintiff must establish "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 321 (Mich. Ct. App. 2010) (citation omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 212 Mich. App. 73, 91 (Mich. Ct. App. 1995) (citation omitted). Accordingly, "[l]iability does not extend to mere insults, indignities, threats,

21

annoyances, petty oppressions, or other trivialities." *Id.*

Here, Plaintiff's complaint contains only a threadbare recital of the elements of this cause of action. For example, he alleges that "Defendants' conduct was extreme and outrageous," that "[t]he conduct was the cause of Plaintiff's complaint," and that "Defendants' conduct caused Plaintiff profound emotional distress and/or physical injuries." ECF No. 1, PageID.12. Such perfunctory, boilerplate allegations are insufficient to satisfy federal notice pleading requirements. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, Plaintiff's complaint does not allege facts suggesting that Defendants' alleged conduct was so outrageous and extreme as to exceed all possible bounds of decency.  As such, dismissal of Count VIII is appropriate.

In conclusion, the Court finds that Plaintiff's complaint fails to state a claim on which relief can be granted. As such, dismissal is warranted under Rule 12(b)(6). Defendants' motion to dismiss is therefore granted.

### C. Defendants' Motion to Disqualify Plaintiff's Counsel [#13] and Defendants' Motion for Leave to File Notice of Supplemental Authority in Support of Motion to Disqualify Plaintiff's Counsel [#22]

Defendants have moved to disqualify Plaintiff's counsel and have requested leave to submit supplemental authority in support of that motion. Given, however, that the Court is dismissing Plaintiff's complaint, these motions will be denied as

moot.

## V.   **CONCLUSION**

Based on the foregoing, Defendants' Motion to Strike Plaintiff's Affidavit [#18] is GRANTED; Defendants' Motion to Dismiss [#12] is GRANTED; Defendants' Motion to Disqualify Plaintiff's Counsel [#13] is DENIED AS MOOT; and Defendants' Motion for Leave to File Notice of Supplemental Authority [#22] is DENIED AS MOOT.

SO ORDERED.

Dated: April 9, 2026                                /s/Gershwin A. Drain
                                                              GERSHWIN A. DRAIN
                                                              United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 9, 2026, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager

23